# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 17, 2013 Session

## MICHAEL WAYNE MEZO v. JENNIFER (PETERSON) MARKER

**Appeal from the Juvenile Court for Marshall County**
**No. 2012JV29     Lee Bussart Bowles, Judge**

---

**No. M2013-00390-COA-R3-JV - Filed December 19, 2013**

---

Father filed petition to modify a parenting plan, asserting that a material change of circumstance had occurred since the entry of the original parenting plan and seeking to be named primary residential parent. At the close of Father's proof, Mother moved to dismiss the petition on the ground that the evidence did not show a material change of circumstance; the court denied the motion and adjourned the hearing, expressing a desire to hear testimony from the child's counselor and receive evidence regarding the child's performance in school. Following the adjourned hearing, the court granted Father's petition. Mother appeals, asserting that the court erred in denying the motion to dismiss and hearing further proof, in granting Father's petition and in making certain evidentiary rulings. Father appeals the court's award of attorney fees to Mother. We vacate the award of attorney fees and remand the case for entry of a supplemental order relative to the award; in other respects the judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part and Vacated in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, M. S., P. J., and ANDY D. BENNETT, J., joined.

Robert H. Plummer, III, Franklin, Tennessee, for the appellant, Jennifer (Peterson) Marker.

Allen Barnes, Hermitage, Tennessee, for the appellee, Michael Wayne Mezo.

## OPINION

Michael Mezo ("Father") and Jennifer Marker ("Mother") are the parents of a ten-year old girl, Alexis Rose Mezo ("Lexi"), born on August 8, 2003. A permanent parenting plan was entered in Williamson County Chancery Court on June 8, 2005, giving the parties joint custody and designating Mother as primary residential parent. On April 19, 2012 Father filed

a petition to modify the parenting plan, alleging that a material change in circumstances had occurred since Mother had been named primary residential parent and seeking, *inter alia*, to be named as the primary residential parent. Mother duly answered the petition generally denying the allegations.

The petition was heard beginning August 17. In addition to his own testimony, Father presented testimony from the following witnesses in support of his contention that a material change of circumstances had occurred: Jenny Mezo, Father's wife; Rueben Alguin, Mother's first husband; John Marker, Mother's second husband; Sherry Strasser, Lexi's first grade teacher; Tammy Mezo, Lexi's Paternal Grandmother; Laura Biggs, Father's wife's best friend; and Debbie Brock, Father's mother-in-law. Mother did not present any evidence, rather she moved to dismiss the petition, stating that Father had failed to present sufficient evidence showing a material change in circumstance; the court denied her motion from the bench. On September 21 the court entered an order styled "Order Granting Partial Relief and Bifurcating Hearing" which (1) granted Father an additional weekend of parenting time per month and telephone contact with Lexi four times a week pending further order; (2) denied Mother's motion for the court to hear Lexi's preferences and motion for involuntary dismissal; and (3) adjourned the hearing to December 19 "to consider the attendance records and grades of the minor child, and to hear the testimony of Allison Clanton, the child's counselor, as to whether there has truly been a material change since the last Parenting Plan that has affected the minor child in a meaningful way."

At the adjourned hearing Father again testified and presented the testimony of Sheila Horton and Lori Curtis, Lexi's third grade teachers; Allison Clanton, Lexi's counselor; and Mistee Harris, Mother's girlfriend. Mother did not put on any proof. The court entered a final order on January 4, 2013, making certain findings of fact and holding that there had been a material change in circumstances following the entry of the 2005 order; the court held that the best interests of Lexi would be served by naming Father as the primary residential parent and approved the parenting plan tendered by Father at the hearing. The court also ordered Father to pay Mother's attorneys fees that she incurred after October 29, 2012, totaling $5,169.25.

Mother appeals, contending that the trial court erred in admitting certain evidence, in denying her motions to dismiss and request for an interlocutory appeal, in finding a material change in circumstance and in modifying the parenting plan; she also asserts that the court made several erroneous factual findings. Father appeals particular evidentiary rulings and the award of attorneys fees to Mother.

# I. DISCUSSION

## A. MODIFICATION OF PARENTING PLAN

A decision on a request for modification of a parenting arrangement requires a two-step analysis. *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003). A party petitioning to change an existing custody order must prove both (1) that a material change of circumstances has occurred and (2) that a change of custody or residential schedule is in the child's best interest. *Kendrick v. Shoemake*, 90 S.W.3d 566, 575 (Tenn. 2002). Only after a threshold finding that a material change of circumstances has occurred is the court permitted to proceed to make a fresh determination of the best interest of the child. *Kendrick*, 90 S.W.3d at 569; *Blair v. Badenhope*, 77 S.W.3d 137, 150 (Tenn. 2002); *Curtis v. Hill*, 215 S.W.3d 836, 840 (Tenn. Ct. App. 2006).

As to the first requirement, *i.e.*, a material change of circumstances, the Tennessee Supreme Court has stated:

> Although there are no bright line rules as to whether a material change in circumstances has occurred after the initial custody determination, there are several relevant considerations: (1) whether a change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered; and (3) whether a change is one that affects the child's well-being in a meaningful way.

*Cranston*, 106 S.W.3d at 644 (citing *Kendrick*, 90 S.W.3d at 570).[1] Only if a material change

---

[1] The General Assembly has also addressed the question of what constitutes a material change of circumstances when a modification of custody or parenting time is sought:

> (B) If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.
>
> (i) In each contested case, the court shall make such a finding as to the reason and the facts that constitute the basis for the custody determination.
>
> * * *
>
> (C) If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the

(continued...)

-3-

of circumstances is shown to exist is the trial court to proceed to the next step of the analysis: whether modification of the existing parenting arrangement is in the child's best interest. *Cranston*, 106 S.W.3d at 644; *Kendrick*, 90 S.W.3d at 569; *Curtis*, 215 S.W.3d at 840. That determination requires consideration of a number of factors, including those set out in Tenn. Code Ann. § 36-6-106(a) (factors to consider in custody determination) or Tenn. Code Ann. § 36-6-404(b) (factors to consider in establishing a residential schedule).

As an initial matter, we address Mother's contention that the court erred when it temporarily modified the parenting schedule after the first hearing in contravention of Tenn. Code Ann. §36-4-405 (b).[2] The modification allowed Father an additional two phone calls per week and one additional weekend per month with Lexi. Mother argues that the modification "put the child into a situation where she had anxiety and was forced to alter her routine and normal lifestyle" and that the court "put the child in an unstable position when there was no need to and Mother has been held accountable for the actions of the child after the child was thrown into it."

---

[1](...continued)
evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Tenn. Code Ann. § 36-6-101 (a)(2)(B), (C). In *Armbrister v. Armbrister*, 2013 WL 5688775, ____ S.W.3d. _____ (October 21, 2013), a case involving the interpretation and application of Tenn. Code Ann. § 36-6-101(a)(2)C), our Supreme Court discussed *Cranston*, *Kendrick*, and *Badenhope* and abrogated the holdings in those cases to the extent they "may be read as requiring a party requesting modification of a residential parenting schedule to prove that the alleged material change of circumstance could not reasonably have been anticipated when the initial residential parenting schedule was established." *Armbrister*, 2013 WL 5688775, at *13. The holding in *Armbrister* does not affect our resolution of this case.

[2] Tenn Code Ann. §36-4-405(b) provides:

(b) In a proceeding for a modification of a permanent parenting plan, the existing residential schedule shall not be modified prior to a final hearing unless the parents agree to the modification or the court finds that the child will be subject to a likelihood of substantial harm absent the temporary modification. If a temporary modification of the existing residential schedule is granted ex parte, the respondent shall be entitled to an expedited hearing within fifteen (15) days of the entry of the temporary modification order.

Mother and Father did not agree to the modification and in the September 21 order the court did not find that Lexi would be subject to a likelihood of substantial harm absent the temporary modification; to that extent, we agree that the modification was contrary to the statute. We have not been cited to any evidence showing that Lexi was adversely affected by the temporary modification or that Mother was prejudiced by it. Considering the record as a whole, as more fully discussed herein, the error did not affect the final judgment; neither did it result in prejudice to Mother. *See* Tenn. R. App. P. 36 (b).

We next address Mother's contention that the court erred in denying her motion to dismiss at the close of the August 17 hearing "in contradiction to [its] finding that there was no material change of circumstance" and by "re-opening the proof sua sponte at the close of [Father's] proof and continuing the hearing for four (4) months to allow [Father] to gather additional evidence not existing at the time of the hearing after a finding that no material change in circumstances could be found from the proof presented." Mother bases her contention on the court's statement that "[a]t this time, I'm not going to make a finding that there's been a material change, but I believe I owe it to the child to hear the totality of the circumstances."[3]

We have considered the court's statement in context and do not agree that it establishes what Mother contends. When the statement was made the court had heard Father's proof and arguments of counsel on the motion to dismiss; in ruling on the motion, the court stated in pertinent part:

> We have an extremely resilient child. Certainly if I look at the records, the mother has made some mistakes and some life choices that I think she would change and I would change for her if she wouldn't. We have a great father. We have a great situation in Bartlett. That in and of itself doesn't give me the need to change a situation that seems to be working.
>
> I don't feel like I have enough information today to solve this puzzle. What I would like to do is reset this case, resume proceedings in December when I can look at the child's attendance records, hear from the counselor, and see the child's grades.

---

[3] While the statement was made in the course of the hearing, it was not a finding of fact or a ruling that was incorporated into either the September 21, 2012 or the January 4, 2013 orders. "It is well settled . . . that a court speaks through its orders and not through the transcript." *Alexander v. JB Partners*, 380 S.W.3d 772, 777 (Tenn. Ct. App. 2011), appeal denied (Mar. 7, 2012) (citing *Steppach v. Thomas,* 346 S.W.3d 488, 522 (Tenn. Ct. App. 2011)). The September 21 order contains no findings of fact or conclusions of law.

If the child is affected by what is going on in either home, that has to be reflected somewhere. I am sure if any of us could live each other's lives, we would do it differently, but that doesn't mean that there's been a material change here. So I need all the facts to consider whether there has truly been a material change.

Rather than holding that a material change of circumstances affecting Lexi's well-being had not been proven, the court simply stated that it wanted to hear from Lexi's counselor before making the determination. This was in furtherance of the court's responsibility to determine if the matters which the court mentioned affected Lexi's well-being in a meaningful way and was not error. *See Cranston*, 106 S.W.3d at 644.[4]

Mother next contends that the evidence does not support the court's holding that there was a material change of circumstance. We review decisions in modification cases *de novo* with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. *Kendrick*, 90 S.W.3d at 569; Tenn. R. App. P. 13 (d). The trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Nelson v. Nelson,* 66 S.W.3d 896, 901(Tenn. Ct. App. 2001) (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997)).

The court found the following facts in the final order:

a. Mother has been married to John Marker and Rueben Alguin.
b. Mother and John Marker had a child, Ariana.
c. Mother has been divorced twice in 2011 (Marker) and 2012 (Alguin).
d. Mother committed herself to a drug rehabilitation program for addiction to prescription drugs in 2010. The addiction arose as a result of a valid prescription after wrist surgery.
e. Mother currently resides with her romantic partner, exposing the child to the third family arrangement in three years.
f. Mother has changed residences at least five times within Marshall County.
g. Mother and Father both have steady employment.
h. Mother suffered some financial hardship, including the cost of rehabilitation and child support.
i. Father remarried and had another child, Colin.
j. Lexi's school record demonstrated indifference toward attendance. She

_____

[4] Mother raises a concern that the trial court incorrectly stated that Mother made the request to hear from Lexi's counselor, Allison Clanton, at a pretrial conference and that the court "improperly continued the hearing to allow testimony of the counselor based on this incorrect statement." In the statement quoted above, the court makes clear that the court wanted to hear from Ms. Clanton; the court was not ruling that Mother had made the request.

accumulated 27 absences in kindergarten, 16 absences in 1st grade, and 12 absences in 2nd grade. She regularly received unexcused tardies and unexplained parent notes. Since the August hearing, Mother's efforts greatly improved her school attendance. For the first half of her third grade year Lexi accumulated no unexcused absences and only 5 absences for excused, medical purposes.

k. The parties stipulated that Lexi had no trouble in 1st and 2nd grade paying attention in school.

l. The testimony of Sheila Horton and Lori Curtis noted difficulty focusing in class in the 3rd grade. Lexi was sleeping in class. She was otherwise described as generally inattentive. Homework assignments were often returned incomplete. Although both teachers noted improvement in the last two weeks of the grading period, Lexi's grades were significantly lower than her potential. The record reflects her grades were: Science-73 (D), Social Studies-77(C), Math, 87 (B), Language Arts-88 (B), Reading-87 (B), and Spelling 94 (A).

m. Sheila Holton stated Lexi was capable of being a strong B student and with work an A student. Her grades did not demonstrate her potential because she showed up unprepared and inattentive.

n. Ms. Holton and Ms. Curtis met with Mother to discuss testing Lexi for learning disabilities. Neither teacher believed in their professional experience Lexi suffered from attention deficient & hyperactivity disorder.

o. Allison Clanton, Licensed Clinic Social Worker, stated it was too early to say if the changes in Lexi's family life were emotionally damaging.

Based on these findings, the Court ruled that "a material change in circumstances that was not known or reasonably anticipated when the 2005 order was entered has occurred since the entry of the initial custody determination and furthermore, such change is one that affects the child's well-being in a meaningful way." The court then applied the factors at Tenn. Code Ann. § 36-6-106(a)[5] to the evidence and stated that "[b]ased on the stability of the family unit

---

[5] The court stated:

a. The parent who has the most love, affection, and emotional ties with the minor child weighs slightly in favor of the Mother because of her role as the primary caregiver for the child.

b. The parent with the greater disposition to provide the child with food, clothing, medical care, education, and other necessary care weighs slightly in favor of the Mother given her role as the primary caregiver for the child.

c. The parent with the greater capacity to contribute to continuity in the child's life, considering the length of time the child has lived in a stable, satisfactory environment, weighs heavily in favor of the Father, which overlaps into the factor considered in section "d" below.

d. The parent who can provide stability of the family unit to the minor child weigh's heavily in favor

(continued...)

and home, school and community record of the child, the Court finds the best interests of the child are effectuated by naming Michael Wayne Mezo, father the primary residential parent."[6]

While Mother contends that certain of the court's factual findings were erroneous, the evidence does not preponderate against the findings; rather the record shows that the court included several statements in its findings of fact which were inaccurate. We have reviewed the matters cited by Mother and have determined that, while the court's findings are contrary to testimony, the inaccuracies do not materially affect the trial court's holding that a material change of circumstance had occurred.[7]

---

[5](...continued)
of the Father. There has been significant change and instability in the Mother's life, to wit; two marriages, two divorces, another significant relationship to which the child is exposed, and rehabilitation for a drug addiction.
e. There are no mental or physical issues that are relevant to the abilities to parent.
f. The home, school, and community record of the child weighs slightly in favor of the Father as the best parent with respect to those issues. The Father has done an exceptional job in staying involved in the child's life, including her education, despite living so far away in Bartlett, Tennessee. Until recently, Mother has not done as good a job in paying attention to the child's needs in this category.
g. The reasonable preference of the child is not applicable, as the child is nine years old.
h. There is no evidence of physical or emotional abuse.
i. There is no concern by the Court that the character and behavior of the other residents of the parents' homes are detrimental to the minor child.
j. The willingness and ability to facilitate and encourage a close and continuing parent-relationship between the child and both parents weighs heavily in favor of the Mother, due to the contrary positions of the Southern Baptist Church to which the Father and the minor child belong, and the mother's homosexual lifestyle.

[6] The court modified the Permanent Parenting Plan to reflect its order in which it named Father as the primary residential parent; approved Lexi to spend 107 days with Mother and 258 days with Father; granted Mother three weekend visitations per month and four telephone visitations per week with Lexi; set the remainder of the residential parenting schedule; and assigned child support and decision making rights regarding Lexi.

[7] Mother asserts that the following findings of fact were erroneous: (1) that Mother had a child with Mr. Marker; (2) that Mother was divorced from Mr. Marker in 2011 and Mr. Olguin in 2012; (3) that Mother committed herself to a drug rehabilitation center in 2010; and (4) that Lexi's counselor stated that "it was too early to say if changes in Lexi's family life were emotionally damaging". The trial transcript shows that Mr. Olguin testified that Mother had a child with him and that he and Mother divorced in 2010; that Mr. Marker testified that he was divorced from Mother in 2012; and that Jenny Mezo testified that Mother's rehabilitation was in 2008 or 2009. The testimony of Ms. Clanton referred to by the court, which occurred when she was asked by Father's attorney whether there would be a risk to Lexi's spiritual development if she continued to live with Mother, to which Ms. Clanton responded "[a]t this point I believe it's too early to say the likelihood of that. . . ".

-8-

Mother also contends that the following findings were not supported by the evidence: (1) that Mother suffered financial hardship, including the cost for rehabilitation and child support and (2) that Lexi's school records demonstrated an indifference toward attendance. These contentions are without merit. Mr. Marker testified that Mother was not financially stable because she owed past debts to the rehabilitation facility and to him; Lexi's attendance record supports the court's finding as to the number of absences over the kindergarten, first and second grades.

The evidence shows that since 2005 Mother has been married and divorced twice, was involved in another romantic relationship at the time of the hearing, and has been in rehabilitation for addiction to prescription medication. The evidence also shows that, over the period, Lexi began school and accumulated a number of absences from school, has been inattentive in class, and failed to turn in completed homework, which led to her grades dropping at school. The record supports the court's holding that a material change of circumstance occurred since the adoption of the original parenting plan in 2005.

The record likewise supports the court's determination that modification of the parenting plan was in the best interest of Lexi. We give substantial deference to trial court's decisions in cases of this sort. As noted above, the court discussed the evidence relevant to the statutory factors and held that some weighed in Mother's favor and some in Father's; the court determined that the greater weight supported modification. The evidence does not preponderate against the court's determination of Lexi's best interest, and its decision to modify the parenting plan and to name Father the primary residential parent.

## B. ATTORNEYS FEES

On October 31, 2012, the trial court entered an order, the pertinent portion of which stated "Father's Motion to Reopen the Proof is granted with the condition that Father is assessed the reasonable attorney's fees incurred after October 29, 2012." Father contends that the court erred in making the award "without first hearing the evidence and considering the merits of the parties' contention."

Tennessee abides by the American Rule regarding the payment of attorney's fees. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000). The rule requires litigants to pay their own attorney's fees unless a statute or an agreement provides otherwise. *Hansen v. Hansen*, M2008-02378-COA-R3-CV, 2009 WL 3230984 (Tenn. Ct. App. Oct. 7, 2009). Whether to award fees in modification proceedings is within the discretion of the trial court; the decision will be upheld on appeal absent an abuse of discretion. *Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351 at *7 (Tenn. Ct. App. Feb. 28, 2007). "A court abuses its discretion when it 'either applie[s] an incorrect legal standard or reache[s] a clearly unreasonable decision, thereby causing an

injustice to the aggrieved party.'" *Id*. (quoting *Kline v. Eyrich*, 69 S.W.3d 197, 204 (Tenn. 2002).

Although the trial court did not state the legal basis for its award, Tenn. Code Ann. § 36-5-103(c), which codifies the court's power to award attorney's fees in custody proceedings, provides a basis:

> The plaintiff spouse may recover from the defendant spouse . . . reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Father asserts that the basis for reopening the proof was newly discovered evidence and that he should not be penalized "for wanting to present that evidence to the Court that ultimately played a large role in persuading the Court to grant the relief sought by the Father."[8] Mother contends that the award of fees was in furtherance of the court's holding that she would not "suffer additional expense" when it denied her motion for interlocutory appeal; alternatively, she asserts that "if the court's decision was in connection with Father's motion to re-open the proof then it may have intended to allow him some leeway under the condition that he pay Mother's attorney fees."

Given the fact that the award was made while the hearing was adjourned and prior to the resolution of the modification petition, we are unable to confirm the legal and factual basis upon which the court made the award. Consequently, we vacate the award and remand the case for the court to enter a supplemental order setting forth the basis of the award of fees to Mother.

---

[8] Father filed an affidavit with the motion in which he recounted, among other things, a recent conversation he had with Ms. Clanton wherein Ms. Clanton expressed some concerns regarding Lexi's decision to become a Christian in the Southern Baptist belief system, as well as an e-mail he had received from Lexi's teacher expressing concerns about Lexi's recent physical appearance and classroom performance.

## C. OTHER ISSUES

Mother contends that, since she was available as a witness, Tenn. R. Civ. P. 32.01[9] only allows her deposition to be used for impeachment purposes and that the court erred in allowing Father to read portions of the deposition into evidence. Tenn. R. Civ. P. 32.01(2), however, specifically permits a deposition of a party to be used by an adverse party "for any purpose." The court did not err is allowing Father to read from her deposition.

Mother appeals the trial court's denial of her motion for interlocutory appeal, made pursuant to Tenn. R. App. P. 9. The court denied the motion in its order entered October 31, stating: "The request for interlocutory appeal is denied under Tennessee Rule of Appellate Procedure 9 as 1) there is no irreparable harm to be prevented, 2) the Mother shall not suffer additional expense, and 3) there is no need to develop a uniform body of law in this area." When a trial court denies a Rule 9 motion, Tenn. R. App. P. 10 provides that the party may file an application to appeal directly with this court. Mother did not make such application in this case; inasmuch as we have determined the merits of the appeal, this issue is moot. *See Ford Consumer Finance Co. v. Clay*, 984 S.W. 2d 615 (Tenn. Ct. App. 1998).

Father asserts that the trial court erred in sustaining hearsay objections to certain testimony he proffered. Inasmuch as we have affirmed the court's grant of Father's motion to modify, these issues are pretermitted.

---

[9] Tenn. R. Civ. P. 32.01 states in pertinent part:

At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Tennessee Rules of Evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof in accordance with any of the following provisions:

**(1)** Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.

**(2)** The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30.02(6) or 31.01 to testify on behalf of a public or private corporation, partnership or association, governmental agency or individual proprietorship which is a party may be used by an adverse party for any purpose.

**(3)** The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds that the witness is "unavailable" as defined by Tennessee Rule of Evidence 804(a). But depositions of experts taken pursuant to the provisions of Rule 26.02(4) may not be used at trial except to impeach in accordance with the provisions of Rule 32.01(1).

-11-

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed in part and vacated in part. The case is remanded for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE